CENTER FOR DISABILITY ACCESS
Ray Ballister, Jr., Esq., SBN 111282
Mark Potter, Esq., SBN 166317
Phyl Grace, Esq., SBN 171771
Dennis Price, SBN 279082
Mail: PO Box 262490
San Diego, CA 92196-2490
Delivery: 9845 Erma Road, Suite 300
San Diego, CA 92131
(858) 375-7385; (888) 422-5191 fax
phylg@potterhandy.com

Attorneys for Plaintiff
MARK WILLITS

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARK WILLITS, an individual,<br><br>   Plaintiff,<br><br>   v.<br><br>**L.A. Arena Company, LLC**, a California Limited Liability Company;<br>**Live Nation Entertainment, Inc.**, a Delaware Corporation;<br>**L. A. Sports Properties, Inc.**, a California Corporation;<br>**L A Clippers LLC**, a Delaware Limited Liability Company; and DOES 1-10, inclusive,<br><br>   Defendants. | CASE NO.<br><br>1. DISCRIMINATORY PRACTICES IN PUBLIC ACCOMMODATIONS [42 U.S.C. §12182(a), et seq.<br><br>2. DENIAL OF FULL AND EQUAL ACCESS [CA CIVIL CODE §§ 54 and 54.1]<br><br>3. VIOLATION OF THE UNRUH ACT [CA CIVIL CODE §51]<br><br>4. NEGLIGENCE (PER SE) |

## INTRODUCTION

Plaintiff, MARK WILLITS, an individual, herein complains, by filing this Civil Complaint in accordance with Rule 8 of the Federal Rules of Civil Procedure in the Judicial District of the United States District Court of the Central District of California, that Defendants have in the past, and presently are, engaging in discriminatory practices against individuals with disabilities.  Therefore, Plaintiff makes the following allegations in this federal civil rights action:

## JURISDICTION AND VENUE

1.	The federal jurisdiction of this action is based on the Americans with Disabilities Act of 1990, 42 United States Code ("U.S.C.") §§12101-12102, 12181-12183 and 12201, et seq. (the "ADA").  Venue in the Judicial District of the United States District Court of the Central District of California is in accordance with 28 U.S.C. §1391(b) because Plaintiff's claims arose within the Judicial District of the United States District Court of the Central District of California and the property that is the subject of this action is located in this District in the County and City of Los Angeles, California.

## SUPPLEMENTAL JURISDICTION

2.	The Judicial District of the United States District Court of the Central District of California has supplemental jurisdiction over the state law claims as alleged in this Complaint pursuant to 28 U.S.C. §1367(a).  The reason supplemental jurisdiction is proper in this action is because all the claims derived from federal law and those arising under state law, as herein alleged, arose from a common nucleus of operative facts and arose out of the same transactions.  The common nucleus of operative facts and the subject transactions, include, but are not limited to, the incidents where Plaintiff was denied full and equal accesses to and enjoyment of Defendants' facilities, goods and/or services in violation of both federal and state laws as described below within this Complaint. Based upon these allegations, the state law claims, as stated herein are so related to the federal action that they form part of the same case or controversy and the actions would ordinarily be expected to be tried in one judicial proceeding.

**NAMED DEFENDANTS AND NAMED PLAINTIFF**

3.      Plaintiff is informed and believes and based thereon alleges that all Defendants herein are and, at all times mentioned herein were, a business or corporation or franchise organized and existing and/or doing business under the laws of the State of California. Plaintiff is informed and believes and based thereon alleges, that Defendants L.A. Arena Company, LLC, a California Limited Liability corporation ("Arena"), Ticketmaster, a division of defendant Live Nation Entertainment, Inc., ("Ticketmaster"), Live Nation Entertainment, Inc., a Delaware Corporation,  ("LEI"), and L A Clippers LLC, a Delaware Limited Liability Company and L. A. Sports Properties, Inc., a Delaware Corporation , (respectively the "L.A. Clippers")are the owner(s) and/or operator(s) of the ticketing and sports entertainment events connected with Los Angeles Clippers games held at the establishment commonly known as Staples Center  Los Angeles, California (the "Property" or the "Facility").

4.      On information and belief, Defendants DOES 1 through 10 are or were owners and/or co-owners and/or operators of the public accommodation business complained of herein and/or were otherwise legally responsible for the acts and omissions complained of herein; including any person or entity involved in the sale of tickets for basketball games at the Property.

5.      The word "Plaintiff" as used herein refers to MARK WILLITS.

6.      Plaintiff is ignorant of the true names and capacities of Defendants sued herein as DOES 1 through 10, inclusive, and therefore sues these Defendants by such fictitious names.  Plaintiff will pray leave of the Court and amend this Complaint to allege the true names and capacities of the Does when ascertained.

7.      Plaintiff is informed and believes, and thereon alleges, that Defendants and each of them herein were, at all times relevant to the action, the owner, lessor, lessee, franchiser, franchisee, general partner, limited partner, agent, employee, representing partner or joint venturer of the remaining Defendants and were acting within the course and scope of that relationship.  Plaintiff is further informed and believes, and thereon alleges, that each of the

Defendants herein, including their managing agents and owners, gave consent to, ratified and/or authorized the acts alleged herein to each of the remaining Defendants.

### CONCISE SET OF FACTS

8. Plaintiff is a person with a disability as defined under both California and federal law, and has a physical impairment which causes him to rely upon a wheelchair for mobility.

9. On multiple occasions during the last 2 years, Plaintiff has purchased (or sought to purchase) tickets for events held at the Staples Center and attend L.A. Clippers games.

10. On each occasion when he attended L.A. Clippers games at the Facility, he was forced to wait to exchange general seating tickets for accessible seating or he has been deterred from purchasing tickets because of discriminatory ticketing policies.

11. Despite his protestations and written and oral exchanges with ticket sales staff, Plaintiff has been required to purchase general seating tickets and has then had to work with staff to exchange these tickets for accessible seating tickets before game time; a process that takes up to a half hour and requires him and his companions to arrive early and work with staff rather than enjoy a game on the same basis as people without disabilities.

12. On multiple occasions, this process resulted in Plaintiff and his companions missing the start of a game.

13. On April 18, 2012, Plaintiff received an email from Defendant L.A. Clippers informing him that the presale for playoff tickets started at 10:00 AM.

14. Plaintiff proceeded to Defendant Ticketmaster's website using the link for accessible tickets provided in the e-mail, and entered into a live chat with a Ticketmaster agent. The agent was unable to obtain pre-sale accessible seats at that moment, and promised Plaintiff that he would contact the box office regarding accessible tickets, and then contact Plaintiff with information on how to purchase accessible tickets.

15. Plaintiff was never contacted by anyone from Ticketmaster or any of the other Defendant entities, despite assurances to the contrary. As a result, Plaintiff was unable to purchase accessible tickets to the Clippers playoff games.

16.     On July 26, 2012, Plaintiff attempted to purchase two tickets for the eight-game ticket package for the 2012-2013 Clippers season through the L.A. Clippers website ticketing system, powered by Ticketmaster. There was no option on the website to purchase tickets for a wheelchair accessible seat, nor was there information anywhere on the website on how to purchase wheelchair accessible tickets through any alternative method of communication.

17.     On July 31, 2012, Plaintiff purchased two non-accessible tickets for the eight-game ticket package for the 2012-2013 L.A. Clippers season through the L.A. Clippers website ticketing system; powered by Ticketmaster. Each ticket was $50 per game, for a total of $400. There was no option anywhere on the website to purchase tickets for wheelchair accessible seating. Plaintiff purchased the tickets anyway and contacted the L.A. Clippers in an attempt to acquire accessible tickets.

18.     On September 4, 2012 Plaintiff was contacted by a L.A. Clippers organization ticket agent named Carlos.

19.     On September 5, 2012 at about 9:45 AM Plaintiff spoke with Carlos. Carlos informed Plaintiff that tickets for wheelchair accessible seating were not available for purchase and that the wheelchair accessible ticketing was going to be "figured out" between the Staples Center and the L.A. Clippers organization sometime before the beginning of the season. Carlos informed Plaintiff that Plaintiff would need to arrive early before each game, visit guest services, explain the situation, and exchange his non-accessible tickets for accessible tickets. Plaintiff expressed his frustration with that process.

20.     On September 12, 2012, Carlos left Plaintiff a voicemail saying "unfortunately we don't have any tickets available with wheelchair access. That's because the building is not under our control. They will have an abundance, not an abundance, but they will have options for you if you get here before every game."

21.     On October 4, 2012, Carlos left Plaintiff a voicemail and said "your tickets were printed and shipped a couple of days ago. Give me a call if you have any questions. They should be getting to you soon."

22. Plaintiff attended the October 31, 2012 game between the L.A. Clippers and the Memphis Grizzlies hoping that the technical violation of the ADA would not produce an actual loss of time or segregation.

23. Plaintiff attended games 1-5 and game 8 of the 2012-2013 eight-game ticket package with either his wife Sheila or his brother David. At each game he attended he was segregated, forced to endure frustration and waste time being treated as a second class citizen based solely on the ticketing policies at issue. The last such game was the April 7, 2012 game between the L.A. Clippers and the L.A. Lakers.

24. On March 22, 2013, Plaintiff received an email telling him that as a "Big Game Plan ticket holder," his deadline to renew his ticket package for next season was April 1, 2013. Plaintiff called the number referenced in the email asking if he could renew his eight-game ticket package with accessible tickets. Plaintiff was told by a ticket representative that was not an option. Accordingly, he would have to endure the same ticketing and seating process he suffered through with the previous eight-game package. Based on his experiences in the 2012 2013, season he declined the renewal offer.

25. Multiple times before the Clippers 2013-2014 season began, Plaintiff went on to the Clippers website trying to purchase wheelchair accessible tickets for both individual games and ticket packages, but could not find any wheelchair accessible tickets for sale, nor were instructions on how to purchase wheelchair accessible tickets through alternate methods of communication.

26. On July 14, 2014, Plaintiff received an email from the L.A. Clippers offering "Big Game Plans" on sale for the upcoming 2014-2015 season. He clicked on the link, was taken to the Clippers ticket website and attempted to purchase wheelchair accessible tickets for the big game plans. No wheelchair accessible tickets were available on the website.

27. Plaintiff then contacted the Clippers organization and spoke with a ticket agent named Tyler. Plaintiff explained his situation and stated that he needed wheelchair accessible tickets. Tyler informed him that wheelchair accessible tickets were not available to purchase at the time. Plaintiff relayed his concerns, informing Tyler that his experiences with exchanged

tickets in the past were time consuming, difficult, frustrating and discriminatory. Nonetheless, Tyler told Plaintiff what he had heard before and stated that Plaintiff would have to arrive early to exchange the non-accessible tickets for accessible tickets, just like he had in the past. Through a series of e-mails Tyler confirmed the extant policy of refusing to sell wheelchair accessible tickets.

28. On August 13, 2014, Plaintiff received an email from the L.A. Clippers with a presale password to purchase single-game tickets before they went on sale to the general public. The presale was scheduled to start on Thursday, August 14 at 2 PM PST. Plaintiff logged onto the L.A. Clippers website at the appointed time and attempted to purchase single-game tickets through the presale; no wheelchair accessible tickets were available through the presale process nor were there instructions on how to purchase wheelchair accessible tickets through alternate methods of communication.

29. On August 13, 2014, Plaintiff attempted to purchase the eight-game package through the website. He then searched L.A. Clippers webpage for terms such as "accessible tickets," "accessible seating," "handicap," etc. There was nothing on the website relating to tickets for people who needed accessible tickets.

30. On August 24, 2014, Plaintiff attempted to purchase single-game wheelchair accessible tickets through the general public sale, rather than the presale. He again logged onto the L.A. Clippers website but no wheelchair accessible tickets were available to the general public nor were there instructions on how to purchase wheelchair accessible tickets through alternate methods of communication.

31. On August 24, 2014, Plaintiff e-mailed Tyler, asking if he could purchase wheelchair accessible single game tickets. He emailed Tyler a second time on August 26, 2014 and a third time on August 28, 2014 asking the same question. Tyler replied on September 8, 2014 stating: "We do not sell single game tickets here. We also have to keep a certain number of those handicap seats available for the day of games. I asked my director when we first started discussing these and he said that we did not have any available for purchase in advance.

If you would like to get other seats I can help with that and then you would just be able to move into comparable handicap seats on those game days."

32. Plaintiff has spent a tremendous amount of time and has suffered substantial inconvenience, frustration, difficulty and embarrassment because of the ticketing policies described above.

33. Based on these facts, Plaintiff alleges that Plaintiff was discriminated against when Plaintiff patronized or attempted to patronize L.A. Clippers games at the Facility. Plaintiff would like to return to the Facility on a regular basis to attend L.A. Clippers games, but Plaintiff is deterred from doing so because of the discriminatory conduct of Defendants as set forth in this Complaint.

34. Plaintiff was and is irritated, frustrated and extremely upset due to Defendants' insensitive and illegal conduct. Plaintiff personally experienced loss of enjoyment, isolation, humiliation, embarrassment, frustration and physical discomfort other kinds of distress because of the inaccessible condition of the Property, all to Plaintiff's general damages in an amount according to proof.

35. The violations of the ADA and California law alleged herein relate to substantial, patent and clearly illegal conduct. Plaintiff tried numerous times to attempt to gain Defendants' voluntary compliance with the law, all to no avail.

36. The named Defendants and DOES 1 through 10 will be referred to collectively hereinafter as "Defendants."

37. Plaintiff avers that Defendants are liable for the following claims as alleged below.

## FIRST CLAIM
## AGAINST ALL DEFENDANTS

*(For Discriminatory Practices in Public Accommodations;*
*Violation of the Americans with Disabilities Act of 1990)*

38. Based on the facts and allegations pled in Paragraphs 1 through 37 above (which

Plaintiff re-pleads and incorporates herein by reference), Plaintiff was denied full and equal enjoyment of and access to Defendants' goods, services, facilities, privileges, advantages or accommodations in violation of the ADA.  Plaintiff alleges that Defendants own, lease and/or operate a public accommodation as defined in 42 U.S.C. §12181(7).  The the manner in which Defendants provided services, specifically the manner in which ticketing and seating policies were developed and operated, failed to provide full and equal access to Defendants' goods and services in public accommodations as required generally by the provisions of 42 U.S.C. §12182(a)and 42 U.S.C. §12182(b)(1)(A).  As set forth in this Complaint below, Plaintiff was specifically subjected to discrimination in violation of 42 U. S.C. §12182(b)(2)(A)(i); 42 U. S.C. §12182(b)(2)(A)(ii), 42 U. S.C. §12182(b)(2)(A)(iii); 12182(b)(2)(A)(iv); 42 U.S.C. because Plaintiff was denied equal access to and enjoyment of the Facility because of Defendants illegal ticking conduct, policies and procedures.

39.   Plaintiff has physical impairments as alleged in Paragraph 8 above, because Plaintiff's conditions affect one or more of the following body systems: Neurological, musculoskeletal, special sense organs, and/or cardiovascular.  Further, Plaintiff's physical impairments substantially limit major life activities; including standing and walking.  Plaintiff cannot perform the above-noted major life activities in the manner, speed and duration when compared to the average person.  Moreover, Plaintiff has a history of or has been diagnosed and/or classified as having a physical impairment as required by 42 U.S.C. §12102(2)(A).

40.   The specific prohibitions against discrimination under the ADA, as set forth in 42 U.S.C. §12182(b)(2)(A)(ii) proscribe the following: "A failure to make reasonable modifications in policies, practices and procedures when such modifications are necessary to afford such goods, services, facilities, privileges, advantages or accommodations to individuals with disabilities...."

41.   Based on the facts and allegations pled in Paragraphs 1 through 40 above (which Plaintiff re-pleads and incorporates herein by reference), Defendants failed and refused to reasonably modify their policies, practices and procedures in that they failed to have a scheme, plan or design to assist Plaintiff and/or others similarly situated in entering and utilizing

Defendants' facilities and services, as required by the ADA. Without limiting the generality of the forgoing Defendants have demonstrated an absolute refusal to obey the provisions of §36.302(f) of 28 CFR Part 36. That section states:

"(f) Ticketing.

    (1)

        (i) For the purposes of this section, "accessible seating" is defined as wheelchair spaces and companion seats that comply with sections 221 and 802 of the 2010 Standards along with any other seats required to be offered for sale to the individual with a disability pursuant to paragraph (4) of this section.

        (ii) Ticket sales. A public accommodation that sells tickets for a single event or series of events shall modify its policies, practices, or procedures to ensure that individuals with disabilities have an equal opportunity to purchase tickets for accessible seating—

            (A) During the same hours;

            (B) During the same stages of ticket sales, including, but not limited to, pre-sales, promotions, lotteries, wait-lists, and general sales;

            (C) Through the same methods of distribution;

            (D) In the same types and numbers of ticketing sales outlets, including telephone service, in-person ticket sales at the facility, or third-party ticketing services, as other patrons; and

            (E) Under the same terms and conditions as other tickets sold for the same event or series of events. "

    42. Based on the facts and allegations pled at Paragraphs 1 through 41 above, and the facts elsewhere in this Complaint, Plaintiff was damaged and will suffer irreparable harm unless Defendants are ordered to discontinue business at the Property or conform with the ticketing policies set forth in the ADA. Plaintiff alleges that Defendants' discriminatory conduct is capable of repetition, and this discriminatory repetition adversely impacts Plaintiff and a substantial segment of the disability community. Plaintiff alleges there is a national

public interest in requiring accessibility in places of public accommodation. Plaintiff has no adequate remedy at law to redress the discriminatory conduct of Defendants. Plaintiff desires to return to Defendants' place of business but is deterred from doing so because of the discriminatory conduct complained of herein. Accordingly, Plaintiff alleges that a prohibitory or mandatory injunction, including a paid monitor, is necessary to assure that Defendants comply with the applicable requirements of the ADA.

## SECOND CLAIM
## AGAINST ALL DEFENDANTS

*(For Denial of Full and Equal Access in Violation of California Civil Code Sections 54 and 54.1)*

43. Based on the facts and allegations pled in Paragraphs 1 through 42 above and elsewhere in this Complaint (which Plaintiff re-pleads and incorporates herein by reference), Plaintiff alleges that Defendants have discriminated against Plaintiff and violated Plaintiff's rights under §§54 and 54.1 of the California Civil Code. At all times relevant to this Action, California Civil Code §§54 and 54.1 have provided that physically disabled persons are not to be discriminated against because of their physical disabilities and that they shall have full and equal use of public facilities and other public places.

44. Section 54(a) of the California Civil Code states that individuals with disabilities or medical conditions have the same right as the general public to the full and free use of the streets, highways, sidewalks, walkways, public buildings, medical facilities, including hospitals, clinics and physicians' offices, public facilities and other public places.

45. Plaintiff is an individual with a disability as defined in California Government Code §12926.

> California Civil Code §54.1 (a)(1) provides, in pertinent part, as follows:
> "54.1(a)(1) Individuals with disabilities shall be entitled to full and equal access, as other members of the general public, to accommodations, advantages, facilities, ... places of public accommodation, amusement, or resort, and other places to which

>the general public is invited, subject only to the conditions and limitations established by law, or state or federal regulation, and applicable alike to all persons."

46. California Civil Code §54(c) provides the violation of the rights of an individual under the ADA also constitutes a violation of §54. Section 54.1(d) of the California Civil Code provides that a violation of the ADA also constitutes a violation of §54.1.

47. Section 54.3 of the California Civil Code provides that any person, firm or corporation that denies or interferes with the admittance to or enjoyment of the public facilities as specified in §54 or §54.1 thereof or who otherwise interferes with the rights of an individual with a disability under §§54 or 54.1 shall be liable for each such offense for the actual damages, and up to three times actual damages, but in no case less than $1,000, and such attorneys' fees as may be determined by the Court.

48. The violations of Plaintiff's rights under the ADA and California law that are alleged in this Complaint have resulted in the denial to Plaintiff of full and equal access to the L.A. Clippers games held at Property and have caused Plaintiff to suffer the damage and harms set forth and alleged in this Complaint.

### THIRD CLAIM
### AGAINST ALL DEFENDANTS

*(For Violation of Section 51 of the California Civil Code)*

49. At all times relevant to this action, §51 of the California Civil Code has provided that physically disabled persons are not to be discriminated against because of their physical disabilities. Based on the facts and allegations pled at Paragraphs 1 through 48 above and elsewhere in this Complaint (which Plaintiff re-pleads and incorporates herein by reference), Plaintiff alleges that Defendants have discriminated against Plaintiff and violated Plaintiff's rights under §51 of the California Civil Code.

50. Plaintiff is a disabled person or has a disability as defined by §12926 of the California Government Code.

51. California Civil Code §51(b) provides, in pertinent part:

"(b) All persons within the jurisdiction of this state are free and equal, and no matter what their sex, race, color, religion, ancestry, national origin, disability, or medical condition are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever."

52. Section 51(f) of the California Civil Code states that a violation of the ADA also constitutes a violation of California Civil Code §51.

53. Section 52(a) of the California Civil Code provides as follows:

"(a) Whoever denies, aids or incites a denial, or makes any discrimination or distinction contrary to Section 51, 51.5, or 51.6, is liable for each and every offense for the actual damages, and any amount that may be determined by a jury, or a court sitting without a jury, up to a maximum of three times the amount of actual damage but in no case less than four thousand dollars ($4,000), and any attorney's fees that may be determined by the court in addition thereto, suffered by any person denied the rights provided in Section51, 51.5, or 51.6."

54. The barriers to access complained of herein because of the intentional and repeated failure of Defendants to comply with the ADA represent patent (and in some cases absolute) barriers to people with mobility disabilities and are of an obvious and intuitive nature. Parties who operate major national sporting events and/or sell tickets for said events are familiar with the requirements for ticketing for use by people with disabilities and are aware that such matters are governed by the ADA.

## FOURTH CLAIM
## AGAINST ALL DEFENDANTS
*(For Negligence Per Se)*

55. Plaintiff re-alleges and incorporates by reference each and every fact and allegation contained in Paragraphs 1 through 53, inclusive as though set forth fully herein.

56. At all times relevant hereto the ADA, §51, et seq. of the California Civil Code, §54, et seq., of the California Civil Code have required that the facility and the goods and services offered there be made accessible to persons with disabilities to the extent set forth by said laws.

57. Defendants owed Plaintiff a statutory and common law duty to provide Plaintiff full and equal access to the goods and services offered at the Facility including providing of ticketing policies and practices that conform with the ADA and California civil rights laws. Defendants' acts or omissions alleged herein are a violation of common law duties as well as the ADA, Code §51, et seq. of the California Civil Code,§54, et seq. of the California Civil Code and public policy and therefore constitute negligence per se.

58. The negligence of each and all of the Defendants (including the common law and statutory violation(s) of Defendants and each of them) was a substantial factor in and the proximate, direct, and reasonably foreseeable cause of Plaintiff's and damages. Plaintiff suffered the damages and harm that the aforementioned statutes and laws are intended to prevent; including but not limited to exclusion from access to and full and equal enjoyment of the goods, services, facilities, privileges, advantages, and/or accommodations offered by Defendants to the general public. No act or omission by Plaintiff contributed to any of the injuries that he suffered. To the extent that Defendant's employees or agents were contributory to the acts that occasioned the harms suffered by Plaintiff, Defendants who employed such person(s) are liable to Plaintiff under the law of *respondeat superior*.

WHEREFORE, Plaintiff prays for damages and relief as hereinafter stated.

## **DEMAND FOR JUDGMENT FOR RELIEF**

A. For general and special damages pursuant to California Civil Code §§52, 54.3, 3281 and 3333, and/or under common law;

B. For a trebling of actual damages, but in no event less than $4,000 in damages pursuant to California Civil Code §52 for each and every violation of California Civil Code §51;

C. In the alternative to the damages pursuant to California Civil Code §52 in Paragraph B above, for a trebling of actual damages, but in no event less than $1,000 in damages

        pursuant to California Civil Code §54.3 for each and every violation of California Civil Code §54.1 and/or California Civil Code §54;

D.   For injunctive relief pursuant to 42 U.S.C. §12188. Plaintiff requests that this Court enjoin Defendants from continuing to do business at the Facility prior assuring that it enacts and retains non-discriminatory ticketing policies and procedures that comply with the ADA and California laws or in the alternative, that this Court issue a mandatory injunction requiring Defendants to immediately adopt compliant policies and procedures with respect to the sales of tickets for wheelchair accessible seating ;

E.   For attorneys' fees and costs pursuant to 42 U.S.C. §12188(a), California Civil Code §52; California Civil Code §54.3, California Code of Civil Procedure §1021.5; and

F.   For such other further relief as the Court deems proper.

DATED: March 31, 2015                 CENTER FOR DISABILITY ACCESS

By _____
      Mark Potter
      Attorneys for Plaintiff
      MARK WILLITS